RECORD NO. 15-

In The
**United States Court of Appeals
For The Fourth Circuit**

**UNITED STATES OF AMERICA, ex rel.
BRIANNA MICHAELS and AMY WHITESIDES**

v.

Respondents,

**AGAPE SENIOR COMMUNITY, INC.; AGAPE SENIOR PRIMARY
CARE, INC.; AGAPE SENIOR SERVICES, INC.; AGAPE SENIOR, LLC;
AGAPE MANAGEMENT SERVICES, INC.; AGAPE COMMUNITY
HOSPICE, INC.; AND AGAPE NURSING AND REHABILITATION
CENTER, INC. d/b/a AGAPE REHABILITATION OF ROCK HILL a/k/a
AGAPE SENIOR POST ACUTE CARE CENTER – ROCK HILL a/k/a
EBENEZER SENIOR SERVICES, LLC; AGAPE SENIOR FOUNDATION,
INC.; AGAPE COMMUNITY HOSPICE OF ANDERSON, INC.; AGAPE
HOSPICE OF THE PIEDMONT, INC.; AGAPE COMMUNITY HOSPICE
OF THE GRAND STRAND, INC.; AGAPE COMMUNITY HOSPICE OF
THE PEE DEE, INC.; AGAPE COMMUNITY HOSPICE OF THE
UPSTATE, INC.; AGAPE HOSPICE HOUSE OF HORRY COUNTY, INC.;
AGAPE HOSPICE HOUSE OF LAURENS, LLC; AGAPE HOSPICE
HOUSE OF THE LOW COUNTRY, INC.; AGAPE HOSPICE HOUSE OF
THE PIEDMONT, INC.; AGAPE REHABILITATION OF CONWAY, INC.;
AGAPE SENIOR SERVICES FOUNDATION, INC.; AGAPE THERAPY,
INC.; AGAPE HOSPICE; HOSPICE PIEDMONT; HOSPICE ROCK HILL;
and CAROLINAS COMMUNITY HOSPICE, INC.**

Petitioners.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

**PETITION FOR INTERLOCUTORY APPEAL**

William W. Wilkins
Kirsten E. Small
Nexsen Pruet, LLC
Post Office Drawer 10648
Greenville, SC 29603
(864) 370-2211
BWilkins@nexsenpruet.com
KSmall@nexsenpruet.com

Mark C. Moore
William C. Lewis
Nexsen Pruet, LLLC
1230 Main Street, Suite 700
Columbia SC 29202
803.540.2146
MMoore@nexsenpruet.com
WLewis@nexsenpruet.com

Deborah B. Barbier
Deborah B. Barbier Attorney at Law
1531 Laurel Street
Columbia, SC 29201
803.445.1032
dbb@deborahbarbier.com

**Counsel for Petitioners**

Attachment
Service by Mail

| | |
|---|---|
| Christy Deluca, LLC<br>Christy M. Deluca<br>3253 Sand Marsh Lane<br>Mount Pleasant, SC 29466 | Strom Law Firm<br>Joseph Preston Strom, Jr.<br>Jessica Hanna Lerer<br>Mario A. Pacella<br>John R. Alphin<br>2110 Beltline Blvd., Suite A<br>Columbia, SC 29204 |
| US Attorney's Office<br>Jennifer J. Aldrich<br>Elizabeth C. Warren<br>1441 Main Street<br>Suite 500<br>Columbia, SC 29201 | Wilcox Buyck and Williams<br>Walker H. Willcox<br>PO Box 1909<br>Florence, SC 29503 |
| McNair Law Firm<br>Joshua W. Dixon<br>Henry W. Frampton, IV<br>PO Box 1431<br>Charleston, SC 29402 | Richardson, Patrick, Westbrook, and<br>Brickman<br>Terry E. Richardson<br>T. Christopher Tuck<br>1037 Check Dawley Blvd. Bldg. A<br>Mount Pleasant, SC 29464 |
| Parham Law Office<br>Rosemary Parham<br>PO Box 1541 | |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... i

INTRODUCTION ................................................................................ 1

I.   FACTS NECESSARY TO UNDERSTAND THE QUESTIONS
PRESENTED ..................................................................................... 3

   A.   FALSE CLAIMS ACT FRAMEWORK IN DECLINED QUI TAMS ...... 3

     1.   CIRCUIT SPLIT ..................................................................... 4

   B.   THIS LITIGATION AND THE SETTLEMENT ....................................... 6

II.   THE QUESTION PRESENTED .................................................. 12

     1.   The Government's right to reject a settlement in a *qui tam* action to which
it has not intervened; and.......................................................... 12

     2.   The Plaintiff-Relators' use of statistical sampling to prove liability and
damages. ................................................................................. 12

III.   THE  RELIEF SOUGHT ............................................................ 12

IV.   REASONS WHY THE APPEAL SHOULD BE ALLOWED AND IS
AUTHORIZED BY 28 U.S.C. § 1292(b). ........................................ 12

   A.   Controlling Question of Law.................................................... 13

   B.   Substantial Ground for Difference of Opinion........................... 14

   C.   Material Advancement of the Termination of the Litigation ..................... 16

V.   CONCLUSION.............................................................................. 17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ahrenholz v. Bd. of Trustees of Univ. of Ill.,* 219 F.3d 674 (7th Cir. 2000) .......... 13

*Cooke–Bates v. Bayer Corp.,* 2010 WL 4789838 (E.D. Va. 2010) ...................... 14

*DRFP, LLC v. Republica Bolivariana de Venezuela,* 945 F. Supp. 2d 890 (S.D. Ohio 2013) .................................................................................................. 15

*Fannin v. CSX Transp., Inc.,* 873 F.2d 1438 (Table), 1989 WL 42583 (4th Cir. 1989) ...................................................................................................... 11, 14

*Holland v. Pardee Coal Co.,* 269 F.3d 424 (4th Cir. 2001) ................................... 14

*In re Pisgah Contractors, Inc.,* 117 F.3d 133 (4th Cir. 1997) ............................... 13

*In re Va. Elec. & Power Co.,* 539 F.2d 357 (4th Cir. 1976) .................................. 16

*Katz v. Carte Blanche Corp.,* 496 F.2d 747 (3d Cir. 1974) ................................... 13

*Kennedy v. St. Joseph's Ministries, Inc.,* 657 F.3d 189 (4th Cir. 2011) ................. 13

*Killingsworth v. Northrop Corp.,* 25 F.3d 715 (9th Cir. 1994) ................. 1, 5, 6, 15

*Landis v. Tailwind Sports Corp.,* 2015 WL 1623282 (D.D.C. 2015) ...................... 6

*North Carolina ex rel. Howes v. W.E. Peele, Sr. Trust,* 889 F. Supp. 849 (E.D.N.C. 1995) ...................................................................................................... 13, 16

*Oyster v. Johns–Manville Corp.,* 568 F. Supp. 83 (E.D. Pa. 1983) ....................... 15

*Primavera Familienstifung v. Askin,* 139 F. Supp. 2d 567 (S.D.N.Y. 2001) ......... 16

*Searcy v. Philips Electronics of N. Am. Corp.,* 117 F.3d 154 (5th Cir. 1997). 1, 5, 6, 15

*States ex rel. Fender v. Tenet Healthcare Corp.,* 105 F. Supp. 2d 1228 (N.D. Ala. 2000) ...................................................................................................... 6

*U.S. ex rel. Dimartino v. Intelligent Decisions, Inc.,* 308 F. Supp. 2d 1318 (M.D. Fla. 2004) ................................................................................................. 6

*U.S. ex rel. Fry v. Health Alliance of Greater Cincinnati,* 2009 WL 485501
(S.D.Ohio Feb. 26, 2009) .................................................................. 15

*United States ex rel. Hullinger v. Hercules, Inc.,* 80 F. Supp. 2d 1234 (D. Utah
1999) .................................................................................................. 6

*United States ex rel. Osheroff v. MCCI Group Holdings, LLC,* 2013 WL 3991964
(S.D. Fla. 2013) .................................................................................. 6

*United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v Provident Life
and Acc. Ins. Co.,* 811 F. Supp. 346 (E.D. Tenn. 1992)........................ 6

*United States v. Health Possibilities P.S.C.,* 207 F.3d 335 (6th Cir. 2000) 1, 5, 6, 15

*Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S.
765 (2000).......................................................................................... 3

## Statutes

18 U.S.C. § 1347 ...................................................................................... 6

28 U.S.C. § 1292(b) .......................................................................... passim

31 U.S.C. § 3729 ................................................................................. 3, 6

31 U.S.C. § 3730(a) .................................................................................. 3

31 U.S.C. § 3730(b) .......................................................................... passim

31 U.S.C. § 3730(c) ............................................................................... 1, 4

31 U.S.C. § 3730(d) .................................................................................. 4

42 U.S.C. § 1320a-7b ............................................................................... 6

## Rules

Fed. R. Civ. P. 17(a)................................................................................ 3

## Treatises

16 Charles Alan Wright et. Al., *Federal Practice & Procedure* § 3930.... 13, 14, 16

INTRODUCTION

This case presents a question of first impression in the Fourth Circuit concerning whether 31 U.S.C. § 3730(b)(1) provides the Government with an unreviewable and absolute right to veto settlements in *qui tam* actions in which the United States (hereinafter "Government") has declined to intervene. This issue is also subject to a circuit split with both circuit and district courts holding on both sides of the issue.[1]

In this case, Petitioner (hereinafter "Agape") and Respondents (hereinafter "Relators") entered into a settlement after three years of protracted litigation. The Government, after declining to intervene more than two years before, objected to the settlement, and in so doing, refused to provide sufficient justification for its objection, contending that § 3730(b)(1) provides the Government with an absolute and unreviewable veto over all *qui tam* settlements. Agape moved to enforce the settlement over the Government's objection contending that the Government's veto is subject to a "good cause" review by the court under 31 U.S.C. § 3730(c)(3) and

---

[1] The Ninth Circuit has held that § 3730(b)(1) does not provide the Government with an unreviewable veto in declined *qui tams*, while the Fifth and Sixth circuit have held that it does. *See Killingsworth v. Northrop Corp.,* 25 F.3d 715, 722 (9th Cir. 1994) (holding the Government's veto is subject to judicial review); *Searcy v. Philips Electronics of N. Am. Corp.,* 117 F.3d 154, 159 (5th Cir. 1997) (holding that the Government has an unreviewable veto over voluntary settlements); *United States v. Health Possibilities P.S.C.,* 207 F.3d 335, 344 (6th Cir. 2000) (holding that the Government has an unreviewable veto over voluntary settlements).

1

§ 3730(b)(4)(B), and in this case, the unreasonable objection lacked "good cause."[2] The district court, while acknowledging that "a compelling case could be made here that the Government [objection] is not, in fact, reasonable," denied the motion ruling that it was restricted from reviewing the reasonableness of the veto because § 3730(b)(1) provides the Government with an unreviewable veto right over settlements in declined *qui tams*.[3] However, in its Order, the district court certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) the issue of whether the Government has an unreviewable veto right over settlements in declined *qui tams*.[4] Ex. A. p. 19. In so doing, the district court acknowledged that Agape and Relators, absent immediate appeal, are forced to proceed with what the district court described as "a monumental trial"[5] which could last "a year or more" when neither party wishes to continue litigation, due solely to an unreasonable Government objection. Ex. A. pp. 6; 18.

---

[2] All pleadings related to the issue Agape seeks to appeal were filed under seal with the district court. Agape will provide copies of these pleading to this Court, if this Court deems it necessary.

[3] The district court's Order is attached hereto as Exhibit A. After issuance of this Order, the District Court issued a subsequent Order ("Redaction Order") correcting and redacting certain information from the previous Order. The Redaction Order is attached hereto as Exhibit B.

[4] The district court also certified a question regarding its ruling on statistical sampling earlier in the litigation. The court's ruling on this evidentiary question does not meet the requirements of § 1292(b), and Agape does not petition this Court for review of this issue.

[5] The district court estimated the expert fees alone to range from $16.2 and $36.5 million. Ex. A. p. 9.

2

Agape petitions this Court to permit appeal of the certified issue. The issue is purely a question of statutory interpretation, and its resolution could terminate the litigation; thus, it is a controlling question of law. Additionally, as evidenced by the circuit split, the issue is subject to differences of opinion. Finally, as discussed by the lower court, resolution of this issue is likely to materially advance the termination of this litigation. Therefore, this Court should permit interlocutory appeal of this issue under § 1292(b).

I.     FACTS NECESSARY TO UNDERSTAND THE QUESTIONS PRESENTED

A.     FALSE CLAIMS ACT FRAMEWORK IN DECLINED QUI TAMS

The civil False Claims Act 31 U.S.C. § 3729, *et seq.* ("FCA"), creates civil liability for "[a]ny person who knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval." § 3729(a)(1). Although the Government is a "real party in interest" in a case brought under the FCA, Fed. R. Civ. P. 17(a), an FCA action does not need to be brought by the Government. The FCA establishes a scheme that permits either the Attorney General, 31 U.S.C. § 3730(a), or a private party, § 3730(b), to initiate a civil action alleging fraud on the Government. A private enforcement action under the FCA is called a *qui tam* action, with the private party referred to as the "relator." *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 769 (2000). When a relator files a *qui tam,* the

3

Government is given 60 days to review the claim and decide whether it will "elect to intervene and proceed with the action." §§ 3730(b)(2); 3730(b)(4).

If the Government intervenes, the relator has "the right to continue as a party to the action," but the Government acquires the "primary responsibility for prosecuting the action." 31 U.S.C. § 3730(c)(1). If the Government declines to intervene, the relator retains "the right to conduct the action." § 3730(c)(3); *see also* 31 U.S.C. § 3730(d) (2) ("If the Government does not proceed with an action under this section, the person bringing the action or settling the claim. . ."). The Government is thereafter limited to exercising only specific rights during the proceeding, such as requesting service of pleadings and deposition transcripts, § 3730(c)(3), and seeking to stay discovery that "would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts." § 3730(c)(4). Finally, when a relator proceeds with the action, the Government may intervene at a later date but only "upon a showing of good cause." § 3730(c)(3).

## 1.    CIRCUIT SPLIT

Although the statutory provisions indicate that in a declined *qui tam* the Relator, and not the Government, will be the party "conducting the action," § 3730(c)(3), and "settling the claim," § 3730(d)(2), a circuit split has developed as to whether the Government, in a declined *qui tam*, may unconditionally veto a

voluntary settlement between a relator and defendant. This split turns, in part, on the interpretation of §3730(b)(1) which provides:

> A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. *The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.*

(emphasis supplied).

The Ninth Circuit, in *Killingsworth v. Northrop Corp.,* 25 F.3d 715, 722 (9th Cir.1994), read § 3730(b)(1) in conjunction with the other provisions in § 3730 and held that the Government's veto power is only absolute during the initial 60 day seal period and approved extensions, after which the Government may only block a settlement after a showing of "good cause," as this is the requirement for the Government to intervene after the 60 day period.[6] The Fifth and Sixth Circuits in *Searcy v. Philips Electronics of N. Am. Corp.,* 117 F.3d 154, 159 (5th Cir. 1997) and *United States v. Health Possibilities P.S.C.*, 207 F.3d 335, 344 (6th Cir. 2000) arrived at the opposite conclusion simply holding that the plain language in §

---

[6] The Ninth Circuit held that the Government was entitled to an evidentiary hearing in order to demonstrate "good cause" for objecting to the settlement. This hearing would be the functional equivalent of a hearing to determine the merits of the Government's "good cause" for a late intervention. *Id.* at 724-725.

3730(b)(1) unambiguously provides the Government with an absolute veto power over settlements for the entirety of any *qui tam* action.[7]

### B.    THIS LITIGATION AND THE SETTLEMENT

On December 7, 2012, this *qui tam* was initiated by Relators on behalf of themselves and the Government claiming damages and other relief under the FCA 31 U.S.C. § 3729, *et seq.*, the Anti-kickback Statute, 42 U.S.C. § 1320a-7b, *et seq.*, and the Health Care Fraud Statute, 18 U.S.C. § 1347. While there are multiple issues raised in the complaint, the central issue on which this case has proceeded revolves around alleged fraudulent billings by Agape to Medicare for hospice patients.

Agape is a faith based South Carolina healthcare provider offering integrated health services for senior adults. Agape offers a wide range of services including

---

[7] District courts in other circuits have held on both sides of the split regarding the Government's ability to unconditionally veto a voluntary settlement in a declined *qui tam*. *See Landis v. Tailwind Sports Corp.*, 2015 WL 1623282 (D.D.C. 2015) (holding the government has an unreviewable veto); *United States ex rel. Osheroff v. MCCI Group Holdings, LLC*, 2013 WL 3991964 (S.D. Fla. 2013) (approving of the approach in *Killingsworth*); *U.S. ex rel. Dimartino v. Intelligent Decisions, Inc.*, 308 F. Supp. 2d 1318 (M.D. Fla. 2004) (approving of the approach in *Searcy*); *States ex rel. Fender v. Tenet Healthcare Corp.*, 105 F. Supp. 2d 1228 (N.D. Ala. 2000) (enforcing settlement and dismissal without consent of the Government); *United States ex rel. Hullinger v. Hercules, Inc.*, 80 F. Supp. 2d 1234 (D. Utah 1999) (limiting relator's obligation to seek Government approval of a settlement to the initial sixty days plus extensions); *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v Provident Life and Acc. Ins. Co.*, 811 F. Supp. 346 (E.D. Tenn. 1992) (abrogated by *Health Possibilities*) (enforcing settlement and dismissal without consent of the Government).

assisted living, skilled nursing, physician services, hospice care, rehabilitation services, and home care for seniors. The focus of this litigation surrounds Agape's hospice care. Essentially, the complaint broadly alleges that Agape fraudulently charged Medicare for hospice services by placing medically ineligible patients on hospice and placing patients on higher levels of hospice, when it was not medically necessary.[8]

The allegations in the complaint encompass approximately 10,000 patients in Agape facilities on which over 50,000 claims were submitted. As a result, extensive discovery has taken place at great expense of Agape and Relators. During this discovery, the district court was asked to determine whether statistical sampling would be allowed to prove damages across this universe of claims. After significant briefing and argument, the Court correctly ruled that statistical sampling is not appropriate in this case.

The consequence of the breadth of the allegations in the complaint is that both parties are facing a monumental trial, where each claim would be challenged on its medical necessity. Thus to prepare for trial, Relators and Agape would have every claim expertly reviewed for medical necessity, which alone would cost between $16.2 million and $36.5 million. Ex. A. p. 9. The trial itself could last for

---

[8] There are also allegations in the complaint alleging false certifications, lack of documentation, and kick-backs, but the central focus of this litigation to date has revolved around the medical necessity of the hospice services charged to Medicare by Agape.

over a year and would consist, for each and every claim, Relators' expert's testimony, Agape's expert's testimony, testimony from both physicians who signed off on the certification for the hospice claim, and testimony from the nurses and other Agape employees who cared for the patient.[9] Agape, Relators, and the district court have recognized that a trial of this magnitude would be detrimental to all parties regardless of the result.

To encourage settlement, the district court, suggested a "bellwether" trial as to the claims surrounding 100 patients selected by the Relators. The goal of this trial was to provide information to the litigants, which could allow them to settle the remaining claims based on the results of trial. The Plaintiffs selected 95 patients, later reducing this number to 38, and trial was to begin on May 5, 2015.

Agape and the Relators also recognized the overwhelming value of settlement in this case and have, through three mediations, diligently worked and succeeded in resolving this matter through settlement. The first mediation took place on November 25, 2014. Agape, Relators, and the Government participated, but negotiations were unsuccessful. A second mediation, this time led by United States Magistrate Judge Mary Gordon Baker, was held on January 8, 2015. Again, Agape, Relators, and the Government participated, and again the negotiations were unsuccessful. After this second failed mediation, counsel for Agape, counsel for

---

[9] A hospice certification requires the signature of both the patient's attending physician and the medical director of the hospice.

Relators, and Magistrate Judge Baker conferred and agreed that the Government's participation was a key factor in the failure of both mediations. When Magistrate Judge Baker conducted a third mediation on January 18, 2015, the Government was not invited to participate. This mediation resulted in a negotiated settlement, in which Agape would pay an agreed upon amount for a full release of all claims.[10] This settlement was reached, in great part through both parties recognizing the immense cost, time, and risk of trial. Neither party reasoned that a trial was the best course of action, and neither party wants to litigate this case further.

After the settlement was reached, the Court was notified and a stay was issued. Shortly after being notified of the settlement, the Government notified Agape and Relators that it was objecting to the settlement because the release was too broad for the settlement amount. For the following five months, Agape and the Government attempted, in good faith, to negotiate the scope of the release. However, the Government would not agree to a full release based on its belief that the total potential damages to the Government in this case would be around $25 million,[11] and the proposed settlement relative to this figure would be insufficient.

---

[10] The amount is not disclosed in accordance with the Redaction Order. Ex. B. p. 2.
[11] The district court notes that this damage figure was reached, "by using an 'error rate' in the '20-60% range' derived from an expert review of what the [g]overnement refers to as 'cherry picked' claims. While the Government's methodology for evaluating this case is not altogether clear to this Court, suffice it to say that the [g]overnment has used some form of statistical sampling

As a result, Agape and the Relators found themselves at an impasse, where the Government was objecting to the settlement based on what Agape and the Relators contend was an unreasonable and unjustifiable damage calculation derived from a method which could not be used for trial. In light of this, Agape moved to enforce the settlement over the Government's objection, asking only that the Government show the court sufficient justification before it may force two parties into bankruptcy through litigation neither party desires. The Order reluctantly denying that motion is the subject of this petition.

As stated previously, while acknowledging the potential unreasonableness of the Government's objection, the district court ruled that it was "constrained to deny the motion to enforce the settlement," and in so doing the district court "adopted the rationale employed by the Fifth and Sixth circuits in full." Ex. A p. 9. The district court then discussed, in detail, its analysis and ruling that statistical sampling is inappropriate in this case. Ex. A pp. 12-17.  Finally, the district court noted:

> [T]he "question of whether the Government should be allowed to reject a settlement in a case for which it has not intervened while relying upon damages model that this Court has rejected for purposes of trial, presents a unique factual development that cries out for interlocutory appeal in this case.

---

extrapolated to the universe of potential claims in its damages calculation." Ex. A. p. 6.

Ex. A. p. 18

The district court went on to certify both the question of whether the Government has an unreviewable veto right over all *qui tam* settlements, and whether the Relators should be permitted to use statistical sampling to prove liability and damages. Ex. A. p. 19. In doing so, the district court recognized the unreasonableness of the Government's objection and its refusal to assume any of the cost of the litigation it is forcing Agape and the Relators to participate in. Agape and Relators have both determined that a monumental year long trial would be detrimental to all parties regardless of whether the trial resulted in $0 or $25 million in damages. The Government refuses to acknowledge this fact and refuses to accept a settlement which all parties have found to be reasonable and fair. Consequently, Agape now petitions this Court for permission to appeal only the issue of whether the Government has an unreviewable veto right over settlements in *qui tam* actions in which it has declined to intervene. [12]

---

[12] Agape was the prevailing party with respect to the district court's statistical sampling ruling and it does not appeal that ruling. Moreover, Agape submits that this ruling is an evidentiary ruling based on the individual facts and circumstances of this case and that it does not lend itself to a narrow and clean resolution on appeal, which § 1292(b) requires. *See Fannin v. CSX Transp., Inc.,* 873 F.2d 1438 (Table), 1989 WL 42583, at *5 (4th Cir. 1989) (unpublished) (noting "the kind of question best adapted to discretionary interlocutory review is a narrow question of pure law"). Second, the Government's ability to object to a settlement relying on a damages model expressly prohibited by the trial court does not depend on the validity of the court's decision to prohibit the damages model offered by the Realtors and urged by the Government. In sum, the statistical sampling ruling does

## II.    THE QUESTION PRESENTED

The district court, *sua sponte*, certified the following questions under § 1292(b):

> 1.    The Government's right to reject a settlement in a *qui tam* action to which it has not intervened; and
>
> 2.    The Plaintiff-Relators' use of statistical sampling to prove liability and damages.

## III.    THE RELIEF SOUGHT

Agape respectfully asks the Court to grant this Petition for Permission to Appeal the District Court's Order that denies Agape's Motion to Enforce the Settlement. If granted, ultimately, Agape seeks reversal of the Order's ruling that the Government has an unreviewable and absolute veto over settlements in declined *qui tams* under § 3730(b)(1).

## IV.    REASONS WHY THE APPEAL SHOULD BE ALLOWED AND IS AUTHORIZED BY 28 U.S.C. § 1292(b).

Section 1292(b) allows this Court to accept an appeal of an interlocutory order when the district court certifies that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see In re Pisgah Contractors,*

---

not meet the elements of § 1292(b) justifying an interlocutory appeal, and it should not be reviewed by this Court at this stage of the litigation, i.e. on interlocutory appeal.

*Inc.,* 117 F.3d 133, 136-37 (4th Cir. 1997). "The purpose of § 1292(b) is to allow for an early appeal of an order when appellate-level resolution of issues addressed by that order may provide more efficient disposition of the litigation." *North Carolina ex rel. Howes v. W.E. Peele, Sr. Trust,* 889 F. Supp. 849, 851-52 (E.D.N.C. 1995); *see also Ahrenholz v. Bd. of Trustees of Univ. of Ill.,* 219 F.3d 674, 677 (7th Cir. 2000) ("The idea was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case."); 16 Charles Alan Wright et. Al., *Federal Practice & Procedure* § 3930 (hereinafter "Wright & Miller") (Section 1292(b) "inject[s] an element of flexibility into the technical rules of appellate jurisdiction established for final judgment appeals under § 1291."). In enacting § 1292(b), Congress considered the "saving of time of the district court and of expense to the litigants. . .to be a highly relevant factor" in the decision to authorize interlocutory review. *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 755 (3d Cir. 1974) (citation omitted).

### A.    Controlling Question of Law

A question of law is "controlling" when it is "serious to the conduct of the litigation, either practically or legally." *Katz,* 496 F.2d at 755; *see also Kennedy v. St. Joseph's Ministries, Inc.,* 657 F.3d 189, 195 (4th Cir. 2011) (finding the "controlling question of law" criterion met since the Court was "faced with a pure

question of law"); *Fannin v. CSX Transp., Inc.,* 873 F.2d 1438 (Table), 1989 WL 42583, at *5 (4th Cir.1989) (unpublished) ("the kind of question best adapted to discretionary interlocutory review is a narrow question of pure law"). Courts will find an issue controlling where prompt appellate resolution of the question "might save time for the district court, and time and expense for the litigants." 16 Wright & Miller § 3930.

The issue of whether the Government has an unreviewable veto power is a narrow question of law involving the construction of § 3730(b)(1). *Holland v. Pardee Coal Co.,* 269 F.3d 424, 430 (4th Cir. 2001) (holding that an issue of statutory construction is a "pure question of law"). Additionally, as the district court observed, a holding that the Government does not have an unreviewable veto could result in an "amicable settlement" and the termination of this litigation, saving the litigants and the court the immense time and expense of a monumental trial, which could cost between $16.2 million and $36.5 million in expert costs alone. Therefore, the "controlling question of law" element in § 1292(b) is satisfied.

B.    Substantial Ground for Difference of Opinion

An issue presents "a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling question of law." *Cooke–Bates v. Bayer Corp.,* 2010 WL 4789838, at *2 (E.D. Va. 2010) (citation omitted). Whether

substantial ground for a difference of opinion exists "may be demonstrated by adducing 'conflicting and contradictory opinions' of courts which have ruled on the issue." *Oyster v. Johns–Manville Corp.,* 568 F. Supp. 83, 86 (E.D. Pa. 1983); *see also DRFP, LLC v. Republica Bolivariana de Venezuela*, 945 F. Supp. 2d 890, 919 (S.D. Ohio 2013) ("[A] substantial ground for difference of opinion exists only when 1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; 2) the question is difficult and of first impression; 3) a difference of opinion exists within the controlling circuit; or 4) the circuits are split on the question.") (quoting *U.S. ex rel. Fry v. Health Alliance of Greater Cincinnati,* 2009 WL 485501, at *1 (S.D.Ohio Feb. 26, 2009)).

Whether § 3730(b)(1) provides the Government with an unreviewable veto right over *qui tam* settlements is an issue of first impression in the Fourth Circuit and other circuits are split on the issue. *See Health Possibilities,* 207 F.3d at 344 (holding that the Government has an unreviewable veto); *Searcy,* 117 F.3d at 159 (holding that the Government has an unreviewable veto); *Killingsworth,* 25 F.3d at 722 (holding that the Government's veto is subject to judicial review). Therefore, the element of "substantial grounds for difference of opinion" in § 1292(b) is satisfied.

C.    Material Advancement of the Termination of the Litigation

The question of whether an interlocutory appeal may materially advance the termination of the litigation is "closely connected" to the question of whether there is a controlling question of law. *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 569–570 (S.D.N.Y. 2001). When a question is "controlling" because reversal would terminate or substantially shorten the litigation, that question necessarily has the potential to advance the termination of the litigation. *See Wright & Miller* § 3930. In analyzing the element, courts will look to whether "early appellate review might avoid protracted and expensive litigation." *Howes,* 889 F. Supp. at 852; *see In re Va. Elec. & Power Co.,* 539 F.2d 357, 364 (4th Cir. 1976) (finding interlocutory appeal would advance the ultimate termination of the litigation because the decision would prevent needless waste of "much time, expense and effort").

In this case, a ruling finding that the Government does not have an unreviewable authority to veto the settlement reached between Agape and Relators would lead to an amicable settlement. As the district court notes, a ruling on this issue could avoid substantial "undue cost[s]" from a "monumental trial," which could take up to "a year or more." Ex. A. pp. 6; 18-19. Finally, neither Agape nor the Relators wishes to continue litigating this case. Thus, a ruling preventing the Government from unreasonably blocking this settlement will undoubtedly lead to

settlement. Consequently, the element of materially advancing "the ultimate termination of the litigation" element of § 1292(b) is satisfied.

V.    CONCLUSION

For the reasons set forth above, Agape respectfully requests that the Court grant its petition for permission to appeal.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

Respectfully submitted,

s/ Kirsten E. Small
Kirsten E. Small
William W. Wilkins
Nexsen Pruet, LLC
Post Office Drawer 10648
Greenville, SC 29603
(864) 370-2211
BWilkins@nexsenpruet.com
KSmall@nexsenpruet.com

s/ Deborah Barbier
Deborah B. Barbier
Deborah B. Barbier Attorney at Law
1531 Laurel Street
Columbia, SC 29201
PHONE:  803.445.1032
FACSIMILE:  803.445.1036
dbb@deborahbarbier.com

s/ Mark C. Moore
Mark C. Moore
William. C. Lewis
Nexsen Pruet, LLC
1230 Main Street, Suite 700
Columbia SC 29202
PHONE:  803.540.2146
mmoore@nexsenpruet.com
wlewis@nexsenpruet.com

*Attorneys for Petitioners*

July 6, 2015
Greenville, South Carolina